Manuel GONZALES, Tommy Ramos, on Behalf of Themselves and all others Similarly Situated, Plaintiffs–Appellees,

v.

Perry A. RIVKIND, Robert Adams, and Alan Nelson, Defendants–Appellants.

No. 86–3194.

United States Court of Appeals, Eleventh Circuit.

Oct. 24, 1988.

William C. Brown, Gen. Litigation and Legal Advice Section, Crim. Div., Thomas Hollenhorst, Asset Forfeiture Office, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

Florida Rural Legal Services, Nora Leto, Bartow, Fla., for plaintiffs-appellees.

Before ANDERSON and EDMONDSON, Circuit Judges, and ATKINS *, Senior District Judge.

EDMONDSON, Circuit Judge:

In this appeal the government challenges a district court judgment holding that the Immigration and Naturalization Service (INS) deprived the plaintiff class members of due process (a) by failing to provide them with an immediate judicial hearing on probable cause after the vehicles of class members were seized for their alleged use in transporting illegal aliens and (b) by imposing payment of seizure-related costs on plaintiffs for release of their vehicles. We determine that there was no violation of plaintiffs-appellees' due process rights; we therefore vacate the district court judgment and remand for further proceedings.

BACKGROUND

Title 8 U.S.C. section 1324(a) makes it illegal, under certain conditions, to transport an illegal alien within the United States.[1] In addition to criminal penalties imposed on the person engaging in such transportation, the vehicle used in the transportation may be seized without a prior hearing and even without a warrant if there is probable cause to believe that section 1324(a) has been or is being violated. *See* 8 U.S.C. sec. 1324(b).

Once seized, the vehicle is subject to forfeiture, according to the provisions relating to seizure and forfeiture for violation of customs laws. *See* 19 U.S.C. secs. 1602–1618. At the time of seizure of the representative plaintiffs' vehicles, the government was required to initiate a judicial forfeiture proceeding if the appraised value of the seized property exceeded $10,000 or if the claimant filed a cost bond within twenty days of notice of the seizure. *See* 8 C.F.R. 274.10 and 274.12 (1982). Property valued at less than $10,000 could be sum-

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. In 1982, at the time of the events giving rise to this case, section 1324(a) read in pertinent part:

(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

. . . . .

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

. . . . .

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony ...

In 1986 section 1324(a) was amended to include transportation of an illegal alien done in reckless disregard of his illegal status. The three year limitation was also dropped. *See* 8 U.S.C. A. sec. 1324(a)(1)(B) (Supp.1988).

marily forfeited if no claim nor cost bond was filed.[2] *See* 8 C.F.R. sec. 274.11 (1982).

In November and December 1982 agents of the United States Border Patrol, in separate occurrences, seized vehicles owned by the representative plaintiffs on the ground that plaintiffs were using their vehicles to transport illegal aliens in violation of section 1324. At the time of seizure, representative plaintiffs received a form letter notifying them of their right to a personal interview with an INS official and their right to present evidence on whether their vehicles were subject to forfeiture. The letter stated that "[i]f the officer determines that the conveyance should not be forfeited, it may be returned to you upon payment of the costs of the seizure."

Instead of filing a claim and cost bond, plaintiffs initiated this class action suit in January 1983 on behalf of themselves and all others in Florida whose vehicles had been, or would be, seized pursuant to section 1324. Defendants are officials of the INS acting in their official capacities and, for this reason, defendants-appellants are hereinafter referred to as "the INS" or "the government." Plaintiffs alleged (1) that the government's failure to provide a prompt postseizure hearing violates due process; (2) that the INS practice of compromising claims upon payment of seizure-related costs violates due process; and (3) that the release of vehicles to those claimants who prevail in a forfeiture proceeding without requiring payment of seizure-related costs violates the equal protection rights of those claimants who are obliged to pay such costs in order to obtain release of their vehicles prior to (and generally in place of) a forfeiture proceeding.

The district court certified the plaintiff class under Fed.R.Civ.Proc. 23 and in January 1986 granted summary judgment for the class. The district court declined to hold section 1324 unconstitutional but did conclude that INS procedures in enforcing the statute violated due process. *Gonzales v. Rivkind*, 629 F.Supp. 236, 240 (M.D.Fla. 1986). The district court awarded plaintiffs injunctive relief requiring the INS to provide a claimant a postseizure probable cause hearing before a judicial officer within seventy-two hours of the claimant's request for such a hearing. *Id.* at 240–41. The court also enjoined the INS from charging claimants for costs related to the seizure of vehicles not found to have been involved in a section 1324 violation and ordered the INS to refund any costs claimants had already paid to secure the release of their vehicles. *Id.* at 241.[3]

The INS appeals the district court's order.

## JURISDICTION

We must first determine whether this court has jurisdiction to hear this appeal. More specifically, we must decide whether the January 15, 1986 judgment appealed from is a final appealable order when plaintiffs' motion for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. secs. 2412(b) and (d)(1)(A), was pending at the time this appeal was brought.[4]

Plaintiffs contend, first, that their underlying due process cause of action is analogous to a constitutional claim for which attorney's fees could be awarded under 42 U.S.C. sec. 1988. Section 2412(b) of the EAJA allows an award of attorney's fees against the government where otherwise authorized by law. Plaintiffs therefore

**2.** These value limitations have been raised since 1982. Now the government must institute judicial forfeiture proceedings if a vehicle has a value in excess of $100,000. When a vehicle is appraised at $100,000 or less, the owner must file a claim to obtain a hearing. *Compare* 8 C.F.R. secs. 274.10 and 274.12 (1982) *with* same sections (1988).

Under the summary forfeiture procedure, the government is required to publish notice of the seizure and the proposed forfeiture once a week for at least three weeks prior to effecting the forfeiture. *See* 8 C.F.R. sec. 274.9.

**3.** Because of its decision on the due process claims, the district court did not address the equal protection claim. Such claim is therefore not before this court on appeal.

**4.** Because the district court continued the consideration of attorney's fees and costs pending appeal, it appears that these issues still remain open.

rely on section 2412(b) to obtain fees under 42 U.S.C. sec. 1988. Because a claim for attorney's fees under section 1988 is collateral to the merits of a case, *see White v. New Hampshire Dept. of Employment Security,* 455 U.S. 445, 451–52, 102 S.Ct. 1162, 1166–67, 71 L.Ed.2d 325 (1982); *McQurter v. City of Atlanta,* 724 F.2d 881, 882 (11th Cir.1984), plaintiffs' claim for attorney's fees on this ground is collateral to the merits of their action.

Plaintiffs' second claim for attorney's fees is brought under section 2412(d)(1)(A) (1982) of the EAJA.[5] Under section 2412(d)(1)(A) the award of attorney's fees is discretionary with the court, depending "upon whether the United States' position in the litigation was 'substantially justified.' " *United States v. Armendaris,* 790 F.2d 860, 863 (11th Cir.1986). This court has already ruled that such a determination is collateral to the judgment on the merits of a case. *Id.*

The district court's judgment on the merits is final and appealable despite the pending claim for attorney's fees. *See Budinich v. Becton Dickinson & Co.,* — U.S. ——, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (questions of attorney's fees do not determine whether a district court decision on the merits is final and appealable). We thus have jurisdiction to hear the appeal

from the district court order of January 1986.

## POSTSEIZURE HEARING

It is undisputed that due process requires no hearing prior to seizure of a vehicle under 8 U.S.C. sec. 1324. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). What plaintiffs challenge in this case is the postseizure process afforded them.

The district court held that the availability of a postseizure forfeiture proceeding did not satisfy due process and required the INS to provide a judicial probable cause hearing within seventy-two hours of a claimant's request for such a hearing or else to release the claimant's vehicle unconditionally. We see no violation of plaintiffs' due process rights under the existing procedure and decline to approve the district court's additional requirements.

■ As the current procedure exists under statute and regulations, a postseizure probable cause hearing is available to all owners of conveyances seized under section 1324 in the context of a judicial forfeiture hearing.[6] In this hearing the government will have the burden of establishing probable cause.[7]

Thus, under present procedure, a person whose vehicle is seized under 8 U.S.C. sec.

---

**5.** Subsection (d) was effective for the period October 1, 1981 to October 1, 1984, upon which date it expired, by statutory provision. Subsequent law repealed the repealer and revived subsection (d) as of August 5, 1985. *See* Pub.L. 99–80, sec. 6, 99 Stat. 183, 186 (1985).

**6.** As we noted earlier, *supra* note 2 and text, the government is obliged to bring this hearing when the vehicle in question is appraised in excess of a certain value. When the vehicle does not exceed this set amount, the owner, to obtain such a hearing, must file a claim and post bond. The government can waive the bond requirement. *See* 8 C.F.R. sec. 274.10(a).

**7.** A claimant who finds the government to be dilatory in bringing such a forfeiture action may, if he desires, hasten such an action. Formally, the claimant can file an equitable action to compel the government (a) to file the forfeiture action or (b) to return the seized vehicle. *See, e.g., Robinson v. United States,* 734 F.2d 735 (11th Cir.1984) (district court had power to or-

der release of property seized and held for forfeiture on basis of government's default in criminal proceedings against claimant). More informally, the claimant can request the INS to refer the matter to the United States Attorney. In addition, the Supreme Court has indicated in dicta that Fed.R.Crim.Proc. 41(e) may provide an avenue of relief to an individual seeking return of property seized and held for forfeiture by the government. *See United States v. $8,850,* 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed. 2d 143 (1983) ("If the claimant believes the initial seizure was improper, he could file a motion under Federal Rule of Criminal Procedure 41(e) for a return of the seized property."). Several courts, however, that have since confronted the question have ruled that where a claimant is not facing criminal prosecution, but only a civil forfeiture action, he cannot avail himself of the relief offered by Rule 41(e). *See, e.g., In re Seizure Warrant,* 830 F.2d 372 (D.C. Cir.1987) (and cases cited therein); *see generally, United States v. United States Currency, $83,310.78,* 851 F.2d 1231 (9th Cir.1988).

1324 can challenge the probable cause basis of the seizure in the proceeding held to determine forfeitability of the vehicle. As the Supreme Court has indicated in two cases dealing with seizure and forfeiture in the customs context, *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), and *United States v. Von Neumann*, 474 U.S. 242, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986), the availability of a timely postseizure hearing fulfills the requirements of due process. These two cases further indicate that the time within which such proceeding must occur is necessarily flexible.

*United States v. $8,850* involved the seizure of currency from someone entering the United States who had failed to declare the money on her customs declaration form. Because of its investigations to determine whether the seized currency was part of a narcotics transaction, the government filed no civil forfeiture proceeding until eighteen months after the seizure. In considering whether the lengthy delay in instituting the forfeiture proceeding violated the individual's due process rights, the Supreme Court indicated that "there is no obvious bright line dictating when a postseizure hearing must occur." *$8,850*, 461 U.S. at 562, 103 S.Ct. at 2011. " 'Due process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* at 564, 103 S.Ct. at 2012 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

The Court concluded that the four criteria used to determine whether governmental delay has abridged a defendant's right to speedy trial, set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), are also appropriate to balance governmental delay against a person's due process rights in a seizure and forfeiture context. Applying these four factors—length of delay, reason for delay, individual's assertion of his right, and prejudice suffered by individual—to the circumstances in *$8,850*, the Court concluded that the eigh-

teen-month delay did not deprive the claimant of due process of law.

*Von Neumann* treated a slightly different aspect of the seizure and forfeiture proceedings—the remission petition—but in doing so, further explained the *$8,850* holding. In *Von Neumann*, a person returning to the United States failed to declare to the Customs Service the automobile he was driving that he had purchased abroad. The Customs Service seized the car. The owner filed a petition for remission or mitigation of forfeiture.[8] The government acted on the petition more than thirty days after its filing, after the owner had already posted bond to obtain release of his car.

The owner challenged the penalty set by the government in answer to his petition by asserting his right to a speedy disposition of the remission petition. In its analysis reaching the conclusion that Von Neumann was deprived of no due process right, the Court stated: "Implicit in this Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect Von Neumann's property interest in the car." *Von Neumann*, 474 U.S. at 249, 106 S.Ct. at 614.

■ Given the teaching of *$8,850* and *Von Neumann*, we must conclude that, because a claimant of a vehicle seized under 8 U.S.C. sec. 1324 has the opportunity to challenge the government's probable cause determination in a forfeiture proceeding, that procedure, if timely, affords a claimant of seized property all process to which he is constitutionally due. *See generally, United States v. U.S. Treasury Bills Totaling $160,916.25 and U.S. Currency Totaling $2,378.75*, 750 F.2d 900 (11th Cir.1985) (implicitly presuming that opportunity for hearing on forfeiture of funds under 21 U.S.C. sec. 881(a)(6) met due process requirement and applying *Barker* criteria to determine whether tim-

---

**8.** According to statute, 8 U.S.C. sec. 1324(b)(3), and regulation, 8 C.F.R. secs. 274.14 and 274.15, even when a vehicle is properly subject to forfei-

ture, the INS may agree to remit or mitigate the forfeiture.

ing of hearing violated due process); *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir.1986) (in case involving forfeiture of proceeds traceable to narcotics transaction, due process did not entitle claimants to probable cause hearing in advance of forfeiture trial).

As to timeliness, especially in view of the Supreme Court's frequently reiterated statements that due process is a flexible concept dependent on circumstances, we must conclude that the district court order—by requiring the INS to hold a probable cause hearing within seventy-two hours of a claimant's request for such a hearing—violated the flexible approach to the timing of such a hearing. The district court order mandates a time period that is too short and advances a rule that is too inflexible. Although *Von Neumann* involved a personal motor vehicle, the Supreme Court did not stress the need for a hearing within a matter of hours. Situations may exist in which a car or truck is so important that a delay of more than seventy-two hours in instituting forfeiture proceedings, whether required or requested, would violate due process. That such particular situations may exist does not, however, justify the district court's universal directive.[9] A case-by-case analysis of the *Barker* factors is required.

We vacate the district court order requiring the INS to hold a probable cause hearing within seventy-two hours of a claimant's request for such a hearing. A dis-

trict court need examine the timeliness of a forfeiture hearing only where such a hearing is required. Because it appears to us that no owner of the plaintiff class was ever entitled to a forfeiture hearing, having neither requested one nor being entitled to one because of the value of the vehicles, the district court on remand probably will not be called upon to examine the timeliness issue for particular vehicles. Still, because we cannot say with certainty—given the record that is before us—that no owner of the plaintiff class was entitled to a forfeiture hearing, we leave it to the district court on remand to determine for each plaintiff whether that plaintiff properly triggered a forfeiture hearing and can prove a claim of untimeliness about that particular hearing.

## PAYMENT OF SEIZURE–RELATED COSTS

The district court ruled that the INS could not require vehicle owners to pay seizure-related costs or to sign indemnity agreements as conditions precedent to the return of vehicles where there was no judicial determination that a violation of section 1324(a) had actually occurred. *Gonzales*, 629 F.Supp. at 241. The district court based this conclusion on its view of such a practice as obviously and "inherently unfair." *Id.* at 240. We disagree.

The INS is authorized by statute to engage in the "compromise of claims," 8 U.S. C.A. sec. 1324(b)(3),[10] as under customs

---

9. Plaintiffs' arguments as to the inapplicability of *$8,850* and *Von Neumann* to their own case are unavailing. They attempt to distinguish these "border" seizure cases from their own situation where the seizures occurred within the United States. Such a distinction is unwarranted. While the necessary level of suspicion for a border search may be less than that required for a non-border search, this is irrelevant to the question of when a judicial hearing must be held after a seizure has occurred. Nothing in *$8,850* suggests that interior seizures should be treated differently from border seizures. Many cases have applied *$8,850* to non-border seizures. *See, e.g., U.S. Treasury Bills Totalling $160,916.25*, 750 F.2d at 901–02; *Banco Cafetero*, 797 F.2d at 1163; *United States v. One 1954 Rolls Royce Silver Dawn*, 777 F.2d 1358, 1361 (9th Cir.1985); *United States v. $18,505.10*, 739 F.2d 354, 356 (8th Cir.1984). Plaintiffs' arguments on this point thus fail.

10. Section 1324(b)(3) reads:
    All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for the violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof, except that duties imposed on customs officers or other persons regarding the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures carried out under the provisions of this section by such officers or persons authorized for that purpose by the Attorney General.

laws, 19 U.S.C.A. sec. 1617. If a claimant disputes either the existence of probable cause or the violation of the statute, the INS may decide that although, in its opinion, probable cause existed for the seizure and a basis exists for the forfeiture, a forfeiture proceeding would not be in the government's best interests. Or, even if a claimant has not yet demanded a judicial forfeiture proceeding, the INS may decide that, given the low value of the conveyance seized, storage and administrative costs will exceed whatever could be recouped through eventual forfeiture of the vehicle. Section 1324(b)(3) gives the INS the authority to settle a claim in such situations.[11]

In its regulations, 8 C.F.R. sec. 274.5(c) and (d), the INS affords the owner of a seized vehicle the right to a personal interview with an INS officer to plead the case against forfeiture of the seized vehicle.[12] If the officer decides against forfeiture of the vehicle, section 274.5(c) and (d) set out the standard conditions of INS compromise: "the vehicle may be returned to the owner upon payment of costs...." 8 C.F.R. sec. 274.5(c). "The owner is responsible for all expenses of seizure and custody, which must be paid prior to release of the conveyance." 8 C.F.R. sec. 274.5(d).

■ The legislative history of the 1981 amendment to section 1324, Immigration and Nationality Act of 1981, Pub.L. 97–116, sec. 12, 95 Stat. 1611, 1617–18 (1981), indicates that the bill was "intended to strengthen INS's seizure and forfeiture authority." H.R. No. 97–264, 97th Cong., 1st Sess. 27, *reprinted in* 1981 U.S.Code Cong. & Admin.News 2577, 2596. First, the bill advanced a change in the INS' legal preseizure responsibility. Under prior law the INS had the burden of establishing actual

knowledge on the part of the owner about illegal use of his vehicle before effecting forfeiture of the vehicle. The 1981 amendment requires only that the INS show probable cause that the conveyance seized was used illegally to transport aliens. Once the government makes this showing, the burden shifts to the owner/claimant to show by a preponderance of the evidence that the conveyance was not used illegally. *Id.* at 27–28, *reprinted in* 1981 U.S.Code Cong. & Admin.News at 2596–97.

As a second change, the 1981 amendment shifted the burden of administrative and incidental expenses of the seizure from the INS to owners and lienholders. Under prior law, the INS was required (a) to bear administrative and incidental expenses where an innocent owner was involved, even where probable cause existed for the seizure, and (b) to satisfy any valid lien or third party interest in a seized vehicle without expense to the interest holder. Because Congress decided that the INS should not be obliged to bear this burden when its officers act with probable cause, the 1981 amendment shifted these costs to owners and interestholders. "In effect the [1981] legislation relieves INS of the obligation to pay any administrative and incidental costs incurred by a successful claimant provided INS had probable cause for the original seizure." *Id.* at 29, *reprinted in* 1981 U.S.Code Cong. & Admin.News at 2598.

In view of legislative intent, we do not see the same unfairness that the district court perceived in the imposition of seizure-related costs on vehicle owners seeking release of their vehicles where probable cause existed for seizure of the conveyance. Evidence in the record indicates

---

We note that "compromise of claims" is used in the statute in addition to the terms "remission" and "mitigation," thus suggesting that a "compromise of claim" is something distinct and different from the processes of remission and mitigation.

11. Of the INS regulations on forfeiture, only one section, 8 C.F.R. sec. 274.20, speaks explicitly to "compromise of claims." The regulation appears designed not to delineate when the INS may compromise claims, but only to provide

that, once a judicial forfeiture proceeding has begun, the United States Attorney handling the case must seek appropriate input from the INS Regional Commissioner and the Department of Justice before entering into a compromise.

12. We note that "owner" in 8 C.F.R. sec. 274.5 is not limited to any sub-group of owners, but appears to apply to all owners, per section 274.-1, which defines "owner" as "a person or persons who have the right to possess and use the conveyance to the exclusion of others."

that, if, after seizure of a vehicle, the INS determines that no probable cause existed for the seizure, the conveyance is returned to its owner *without* his paying any seizure-related costs. In addition, if a claimant prevails in a forfeiture proceeding, his vehicle is returned to him, again, without his having to pay any costs. Only where an owner wishes to compromise his claim— to obtain release of his vehicle without challenging the INS' belief that it acted with probable cause—is the owner obliged to pay these costs. In the light of (a) the INS' statutory authority to settle claims, and (b) the intent of the 1981 amendments to relieve the INS of the financial burden of storage and administrative costs connected with vehicle seizure whenever the INS acts with probable cause, the provisions of the district court order relating to costs must be vacated.

In summary, we determine that there was no violation of due process. We note that the district court did not address the equal protection claim raised with regard to payments for release of vehicles, and accordingly, that issue remains available to the district court on remand.

CLASS CERTIFICATION

Pursuant to Fed.R.Civ.Proc. 23, the district court certified the following class:

> All persons whose vehicles have been or will be seized by agents from District Six of the Immigration and Naturalization Service and who have not been or will not be afforded a prompt probable cause hearing before an impartial individual.

The legal issue regarding the right to a probable cause hearing was common to all plaintiffs, and the district court apparently did not err in certifying a class to decide that issue. We note, however, that if any members of the class acted to obtain a forfeiture hearing, thus raising the question of timeliness, each case would be fact-specific and thus class action seemingly would be inappropriate.[13]

---

13. The district court also certified a subclass:
> All vehicle owners whose vehicles were not used in violation of 8 U.S.C. sec. 1324(a), but who must pay costs of seizure and release Defendants from liability in order to get their vehicles returned.

REVERSED in part and REMANDED for further proceedings not inconsistent with this opinion.

The parties have not briefed and we do not address the propriety of the certification of this subclass. On remand, the district court should feel free to reconsider in the light of new facts or evidence whether such class certification is appropriate.